## ALDRICH v. ERIE R. CO.

(Circuit Court of Appeals, Sixth Circuit. November 10, 1924.)

No. 4042.

1. **Appeal and error** ⟣882(14)—**Party held not entitled to complain of withdrawal of question from jury.**

A party may not allege error in the withdrawal of a question from the jury, where his own testimony, not claimed to have been mistaken, rendered such question immaterial.

2. **Trial** ⟣295(6)—**Instruction held not erroneous.**

In an action against a railroad company for injury to an engineer from explosion of a locomotive boiler, an instruction that the jury must find the cause of the explosion *held* not erroneous, where, taken with its context, it was in effect that to charge defendant with liability they must find that the explosion was due in whole or part to its failure to perform its duty in one or more of the respects alleged.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Action at law by Edson Aldrich against the Erie Railroad Company. Judgment for

---

[5] See Ford v. United States, C. C. A. 6, 281 F. 298, 303, 304; Id., 264 U. S. 239, 44 S. Ct. 300, 68 L. Ed. 658.

defendant, and plaintiff brings error. Affirmed.

D. F. Anderson, of Youngstown, Ohio (Anderson, Lamb & Jenkins, of Youngstown, Ohio, on the brief), for plaintiff in error.

E. A. Foote, of Cleveland, Ohio (Cook, McGowan, Foote, Bushnell & Burgess, of Cleveland, Ohio, on the brief), for defendant in error.

Before DENISON, MACK, and KNAPPEN, Circuit Judges.

MACK, Circuit Judge. Plaintiff in error, a locomotive engineer employed by defendant in error, was severely injured while engaged in interstate commerce, as a result of the explosion of the engine boiler. The action is based upon the alleged failure of the Railroad Company to comply with the provisions of the Safety Appliance Act (Comp. St. § 8605 et seq.) and Federal Boiler Inspection Act (Comp. St. § 8630 et seq.) and to make proper, sufficient, and timely inspection.

Under the evidence, the only possible cause to which the explosion may be ascribed is the low level of water in the boiler. The water glass on the boiler, which, when functioning properly, should enable the engineer to observe at a glance the level of the water in the boiler, is alleged to have failed to work some 16 miles before the explosion, owing to a defective gasket. The engineer and fireman testified that the gasket had crumbled and rotted, a condition which should not have existed, if it had been seasonably inspected and renewed. Defendant's witnesses testified that the gaskets had recently been properly and timely renewed, and that on examination after the explosion the one in question was in sound condition.

The boiler was also equipped with three water gauge cocks, which were working properly, and which furnished means of determining, even more accurately and reliably than the water glass, the height of the water above the crown sheet. Both engineer and fireman testified that the engineer had tested the water level by these gauge cocks, both before and after the water glass had gone out of commission. The fireman testified that the middle or lower water cock had been used only three or four seconds before the explosion, while the engineer said he had used them about a half mile before the place of the accident was reached. As the train was running from 30 to 40 miles an hour, that would be about a half minute before the explosion. The engineer testified that there was then water at the level of both the bottom

and the middle gauge. As the bottom gauge is about 4½ to 5 inches over the highest part of the crown sheet, and the middle gauge about 2½ or 3 inches higher, it is difficult to understand how the explosion could have occurred, unless the engineer and fireman were either mistaken as to the time of the taking of the tests, or were misrepresenting the situation.

The locomotive had, as is usual, two injectors, one on the engineer's and the other on the fireman's side. The former failed to work properly some 10 or 15 minutes before the explosion, but the latter functioned properly, according to the testimony. The boiler was also equipped with a fuse plug at the top of the crown sheet. If the water above the crown sheet gets so low as to expose the fuse plug to dry heat, the disc should melt, and steam and water should flow into the fire box, reducing the intensity of the heat and fire, and making sufficient noise and smoke to attract the attention of the engineer to the impending danger. The engineer and fireman testified that they heard and saw nothing that indicated to them that the plug had fused; on the other hand, defendant's witnesses testified, from the inspection after the explosion, that the plug must have fused properly. The jury rendered a verdict for defendant.

[1] The principal error assigned relates to the action of the trial judge in withdrawing from consideration of the jury any question of a defective water glass, because, as he stated, the evidence failed to show any causal connection between the alleged defective condition of the water glass and the explosion. If the tests were made with the water cocks less than a half minute before the accident, as testified to by plaintiff and his fireman, it is difficult to see that the presence or absence of a water glass, a less reliable indicator of the water level, could have any causal connection either with the explosion or with plaintiff's injuries resulting therefrom. The court apparently, and we think correctly, assumed that facts testified to and admitted by and on behalf of the plaintiff should, as against the plaintiff, be regarded as true, especially as the attorney, in excepting to the withdrawal of this issue, offered no reason and made no suggestion that the court, as against the plaintiff, need not and should not accept the testimony adduced by and for him as true.

It is unnecessary for us now to determine whether the issue should properly have been submitted to the jury, if it had been specifically urged that the evidence, taken as an en-

tirety, indicated that the plaintiff and the fireman, testifying in his behalf, must either have been mistaken in their recollection or have testified falsely as to the taking of the tests with the water cocks.

Error is further alleged in the trial court's withdrawing the subject of inspection from the consideration of the jury. Inspection was not a real issue in the case. Defendant's duty would not have been satisfied by proper inspection. It was higher. Under the Safety Appliance Act, it was to furnish safe appliances; and the trial judge so charged. Except for the water glass matter herein above considered, he specifically submitted to the jury all questions fairly involved.

[2] Viewing the charge as a whole, we likewise find no error in the instruction that the jury must determine from the evidence what was the cause of the explosion. Literally, and without reference to the context, this is inaccurate. In its context the charge means no more than that, before holding defendant guilty, the jury must find the explosion due, in whole or in part, to defendant's failure, in one or more of the matters alleged, to perform its duty.

We find the charge on the matter of the fusible plug entirely adequate, and we discern no error in the refusal of the trial judge to give the instructions requested by the plaintiff.

Affirmed.